**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JOSHUA WILLIAM G.,[1]**       ) | |
|        ) | |
|       **Plaintiff,**     ) | |
|        ) | |
| **vs.**        ) | Case **No. 19-CV-1047-SMY** |
|        ) | |
| **COMMISSIONER OF SOCIAL**   ) | |
| **SECURITY,**       ) | |
|        ) | |
|       **Defendant.**   ) | |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Joshua William G. seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Income Security (SSI) benefits pursuant to 42 U.S.C. § 423 (Doc. 1).

**Procedural History**

Plaintiff applied for SSI on September 27, 2011, and DIB on October 13, 2011, alleging a disability onset date of December 5, 2010 (Tr. 51, 53 and 107-116). After conducting an evidentiary hearing, the ALJ denied the application on January 7, 2014 (Tr. 14-25). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1-7).

Plaintiff sought judicial review, filing a civil case in this Court on May 12, 2015. *See Joshua William G. v. Commissioner of Social Security*, 15-cv-538-SMY-MAB. The undersigned

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See*, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

reversed the final agency decision on July 27, 2016, and remanded the case to the Commissioner for rehearing and reconsideration of the evidence pursuant to sentence four of 42 U.S.C. § 405(g) (Tr. 513-539).

On remand, the Appeals Council issued an order remanding the case to an ALJ on November 1, 2016 (Tr. 540-542).   Following a second evidentiary hearing held on May 24, 2017, the ALJ found Plaintiff disabled and entitled to benefits from September 2, 2015; not December 5, 2010, through September 1, 2015 (Tr. 388-413).   The Appeals Council assumed jurisdiction of the matter, and in a decision dated August 16, 2019, determined that Plaintiff became disabled May 10, 2013, but not before (Tr. 364-373).   This was the final act of the Commissioner.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ and Appeals Council failed to properly weigh the medical opinion evidence related to the period prior to May 10, 2013.

2. The ALJ and Appeals Council failed to properly evaluate Plaintiff's subjective statements for the period prior to May 10, 2013.

## Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.   Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five

2

questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work?  *See* 20 C.F.R. § 404.1520.   An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled.   A negative answer at any step, other than at step 3, precludes a finding of disability.   The claimant bears the burden of proof at steps 1–4.   Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."  42 U.S.C. § 405(g).  Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## Decisions of the ALJ and Appeals Council

The ALJ followed the five-step analytical framework described above (Tr. 393-405).   She determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date (Tr. 395); found that since the alleged onset date of disability, December 5, 2010, Plaintiff had severe impairments of obesity, cellulitis and lymphedema of the lower extremities, and lumbago and lumbar radiculopathy (Tr. 395); and found that Plaintiff's sleep apnea and diabetes mellitus were non-severe (Tr. 396).

The ALJ concluded that since the alleged onset date of disability of December 5, 2010, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.   (*Id.*).   She found that **prior to** September 2, 2015 (the date on which Plaintiff became disabled), he had the residual functional capacity to perform sedentary work, but could never climb ladders, ropes, or scaffolds, could never crouch or crawl, could only occasionally climb ramps or stairs, balance, stoop, or kneel, and could not work at unprotected heights or around moving mechanical parts or other such hazards.   (*Id.*).

The ALJ further found that **beginning on** September 2, 2015, Plaintiff had the residual functional capacity to perform sedentary work, but could never climb ladders, ropes, or scaffolds, could never crouch or crawl, could only occasionally climb ramps or stairs, balance, stoop, or kneel, could not work at unprotected heights or around moving mechanical parts or other such hazards, and had to elevate his legs to waist level for 20 minutes every hour.   (Tr. 401).

Based on the testimony of a vocational expert, The ALJ concluded that Plaintiff was not disabled prior to September 2, 2015, but became disabled on that date and has continued to be

4

disabled (Tr. 404): Plaintiff was not able to do any past relevant work (Tr. 402); prior to September 2, 2015, jobs existed in significant numbers in the national economy that Plaintiff could have performed (Tr. 403); beginning on September 2, 2015, no jobs existed in significant numbers in the national economy that Plaintiff could have performed (Tr. 404); and Plaintiff has not been able to transfer job skills to other occupations (Tr. 403).

The Appeals Council (AC) adopted the ALJ's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable (Tr. 369). However, the AC disagreed that Plaintiff's disability began on September 2, 2015; it concluded that Plaintiff became disabled on May 10, 2013. (Id.).

<u>**The Evidentiary Record**</u>

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by Plaintiff.

**Agency Forms**

Plaintiff was born in 1979 (Tr. 107) and was 40 years old at the time of the ALJ and AC decisions (Tr. 370).   He states he is disabled because of lumbar spine impairment, cellulitis in both legs, severe back pain, and a right knee replacement (Tr. 132, 683).   At the time of his original Application, Plaintiff was 5'9" and weighed 415 pounds.   (*Id.*).   His weight fluctuates in the 400 plus pounds range.   (*Id.*).   He indicated he stopped working in early 2009 because his disability set in. (*Id*)   He had worked in the past as a general laborer (Tr. 133, 684, 713).   On December 5, 2010, Plaintiff stated his injuries and alleged disabilities were severe enough that he

had to stop working (Tr. 132, 683).   He completed 1 year of college in 2000 (Tr. 684).

Plaintiff took Crestor for cholesterol, Hydrocodone for the pain in his back and legs, Simvastatni for cholesterol, and Maxzide as a diuretic (Tr. 686).

Plaintiff completed a subsequent function report in July 2015 (Tr. 702-709).   He lived in a house with family and stated his back and leg pain limited his ability to work (Tr. 702).   He got dressed usually in a seated position and often times wouldn't shave because he couldn't stand at the sink and mirror long enough without pain (Tr. 703).   He occasionally made himself sandwiches or frozen meals, but could not cook himself full meals because he could not stand long enough to complete them (Tr. 704).   His household activities included laundry and mowing the yard on a riding mower.   (*Id.*).   He occasionally went outside and would either drive a car or ride with others (Tr. 705).   He would go shopping for his medicines and toiletries about once a month. (*Id.*).   He can handle his own finances.   (*Id.*).

Plaintiff indicated that his hobbies included watching television, using his computer, fishing, hunting, and four-wheeling (Tr. 706).   The only activities he was able to do with any frequency were watching television and using his computer.   (*Id.*).   He occasionally visited with family and friends to talk, play cards, or watch television.   (*Id.*).

Plaintiff stated that he had difficulty walking, lifting, squatting, and stair climbing (Tr. 707).   He indicated that his back hurt while performing those activities, and his legs hurt with squatting or stair climbing.   (*Id.*).   He could only walk when his back wasn't hurting him, and he would have to take 10-15 minutes breaks while he was walking.   (*Id.*).   He uses a cane when his back is hurting (Tr. 708).   He gets along with authority figures and can handle stress and changes in routine moderately well (Tr. 707).

**Evidentiary Hearing**

Plaintiff was represented by counsel at the May 24, 2017, ALJ hearing (Tr. 416).  He testified that he stopped working in 2009 or 2010 because his legs were hurting, swollen, and heavy to carry around, and his back was hurting (Tr. 422).   Plaintiff also testified regarding his problems with cellulitis (Tr. 427) and obesity (Tr. 427-428).

A vocational expert (VE) also testified.  The ALJ posed a hypothetical to the VE that comported with the ultimate RFC assessment – a person with Plaintiff's age and work history who was able to perform work at the light level: the person should avoid ladders, ropes, and scaffolds; no crouching or crawling; occasional ramps, stairs, balancing, stooping, and kneeling; no work at unprotected heights; no work around moving mechanical parts or other such hazards.   (Tr. 432). The VE testified that this person could not perform any of Plaintiff's past work.   (*Id.*).   However, if he could do light exertional level work, he could be a garment sorter, photo copy machine operator, or mail clerk.   (*Id.*).

The ALJ also posed a hypothetical to the VE that comported with the ultimate RFC assessment – a person with Plaintiff's age and work history who was able to perform work at the sedentary level.   (*Id.*).   The VE testified that a person performing sedentary level work could be food and beverage order clerk, document preparer, or circuit board assembler (Tr. 432-433).   If that person needed to elevate their legs to waist level for 20 minutes every hour, they would be excluded from work at all levels because even at the sedentary level, one cannot ergonomically perform sedentary desk-level work and would not be accepted in a competitive job setting (Tr. 433-434).

7

### Medical Records

Plaintiff's treatment for low back pain began in February 2011 with Dr. Robert Ayers (Tr. 244-245).   Dr. Ayers noted swelling in Plaintiff's right knee and marked obesity as Plaintiff weighed 400 pounds (Tr. 244).   Dr. Ayers referred Plaintiff to orthopedist, Dr. Timothy Penn (Tr. 191).

Dr. Penn's notes indicate that Plaintiff had a history of cellulitis and extremity swelling, that he moved with difficulty, and had fullness in the soft tissue of his thigh that appeared to be fluid collection.   (*Id.*).   An x-ray showed Plaintiff had mild medial joint space narrowing of the right knee but no signs of fracture, dislocation, or bone destruction.   (*Id.*).   An MRI in March 2011 showed extensive edema in the subcutaneous tissue in Plaintiff's right knee (Tr. 190).   Dr. Penn reviewed the MRI and determined that Plaintiff's symptoms were due to chronic lymphedema caused by his weight (Tr. 189).   He concluded that Plaintiff needed to lose a significant amount of weight to improve his symptoms.   (*Id.*).

Plaintiff returned to Dr. Ayers in March 2011 for left shoulder pain (Tr. 247-48).   X-rays of his shoulder and back were taken during this visit which showed minimal degenerative changes in his spine and a normal left shoulder.   (Tr. 186-88).   Plaintiff returned to Dr. Ayers in May 2011 for recurrent cellulitis in both legs and was prescribed an antibiotic (Tr. 254-55).   In August 2011, Plaintiff presented to Dr. Ayers with an earache and depression (Tr. 251).   Dr. Ayers wrote a letter indicating that he treated Plaintiff for severe obesity and that the severe obesity rendered Plaintiff unable to work (Tr. 199).   Plaintiff returned to Dr. Ayers in November 2011 for a routine follow-up.   Dr. Ayers concluded that Plaintiff had symptoms associated with anxiety (Tr. 252).

Dr. Ayer's final notes regarding Plaintiff are from August 2012 (Tr. 236). At that time, Plaintiff reported back pain and his recorded weight was 430 pounds (Tr. 237). He had lumbar spine tenderness and stated he could not afford testing due to his lack of insurance (Tr. 238). Dr. Ayers diagnosed Plaintiff with obesity and lumbago. (*Id.*).

Dr. Susan Reynolds took over Plaintiff's treatment in Dr. Ayers' office and first saw him on April 19, 2013, for hyperlipidemia and back pain (Tr. 355). She diagnosed Plaintiff with low back pain, hyperlipidemia, and obesity (Tr. 358). At a follow-up visit on June 17, 2013, Plaintiff reported unchanged symptoms (Tr. 359). On January 22, 2014, Plaintiff reported ongoing musculoskeletal pain involving his back and legs/knees (Tr. 770). He also reported fatigue, difficulty sleeping, and tingling in his legs (Tr. 771). Dr. Reynolds examined Plaintiff and noted edema with capillary refill of greater than 2 seconds, lumbar spine tenderness, and pain with motion in the lumbar spine (Tr. 772). She diagnosed lymphedema, stasis dermatitis of both legs, lower back pain, and myalgias and myositis (Tr. 773).

**Opinions of Treating Physicians**

In November 2011, Dr. Ayers completed an impairment questionnaire regarding Plaintiff's capabilities, citing his records for evidence supporting his findings (Tr. 257-65). According to the questionnaire, Dr. Ayers diagnosed Plaintiff with hypertension, degenerative disc disease, obesity, and leg cellulitis, and noted that his prognosis was fair (Tr. 257). Plaintiff's primary symptoms were swelling in his legs, and daily leg and back pain (Tr. 258). His pain was noted as 8 out of 10 – moderately severe (Tr. 259). Dr. Ayers opined that Plaintiff could sit for 4 hours out of an 8 hour day and could stand or walk for 2 hours of an 8 hour day. (*Id.*). He opined that Plaintiff could not to sit continuously in a work setting (Tr. 259), could frequently lift or carry up

to five pounds, and could occasionally lift or carry all other weights (Tr. 260).  He noted that Plaintiff was not a malingerer, was capable of moderate work-related stress (Tr. 263), that his pain, fatigue, and other symptoms would periodically interfere with his attention and concentration (Tr. 263), that he would have good and bad days,   and that he was prone to infections due to cellulitis (Tr. 264).  Dr. Ayers estimated Plaintiff would be absent from work on average 2 or 3 times a month due to his impairments or treatments.  (*Id.*).

Dr. Ayers also wrote a letter regarding Plaintiff's capabilities in conjunction with the impairment questionnaire (Tr. 199).  In the letter, Dr. Ayers states that: Plaintiff suffered from severe obesity and is unable to work due to the daily pressure of his weight; suffered from edema in his bilateral lower extremities as a result of his weight; and Plaintiff was not stable enough to work due to his weight.  (*Id.*).

Dr. Reynolds completed an impairment questionnaire regarding Plaintiff's capabilities on January 22, 2014 (Tr. 346-353).  She reported treating Plaintiff every 3 to 6 months for lymphedema of both legs with pain on walking and low back pain with prolonged walking and standing (Tr. 346).  Her prognosis for Plaintiff was poor.  (*Id.*).  Her clinical findings included severe swelling in both legs (right greater than left), constant pain in the lower back, problems with climbing stairs, and heaviness in the legs.  (*Id.*).  She noted Plaintiff's primary symptoms as back pain, fatigue, limited exercise tolerance, muscle spasms, and severe stasis dermatitis of the legs with swelling, redness, and pain (Tr. 347).  She reported Plaintiff's pain and fatigue as moderately severe and noted that he needed to elevate his legs to obtain relief of the pain and swelling (Tr. 348).  Dr. Reynolds noted that Plaintiff had longstanding symptoms and limitations due to his impairments, but they had become worse in the previous year (2013) (Tr. 352) and were

10

expected to last at least twelve months (Tr. 351).   She opined that Plaintiff was able to sit 3-4 hours in an 8 hour workday and could stand or walk a total of 2 hours (Tr. 348).   She indicated that Plaintiff needed to get up and move around every 30 minutes when sitting and could not sit again for 20 minutes (Tr. 348-349).   She opined that Plaintiff could frequently lift/carry 5 pounds and occasionally 20 pounds (Tr. 349).   She indicated that Plaintiff's medications caused side-effects of fatigue and constipation (Tr. 350) and that his pain, fatigue, and other symptoms were frequently severe enough to interfere with his attention and concentration (Tr. 351).   Dr. Reynolds did not believe that Plaintiff was a malingerer (Tr. 351).   She indicated that Plaintiff required unscheduled breaks to rest every 10 to 15 minutes during an 8 hour day for 5 to 10 minutes at a time, that he had good days and bad days, was prone to skin infections with a history of cellulitis, and would be absent from work on average more than 3 times a month (Tr. 352).

### Consultative Examination

Plaintiff had a physical consultative examination with state agency physician Raymond Leung, M.D. in December 2011 (Tr. 203-209).   Dr. Leung noted that Plaintiff walked with a minimal waddle and was able to walk 50 feet unassisted and could tandem walk, hop, heel walk, and squat (Tr. 205).   Straight leg raising bilaterally was to 40 degrees. (*Id.*).   Dr. Leung's clinical impressions were low back pain with forward flexion in the lumbar spine limited to 85 degrees; right knee pain due to a mass on his inner knee, cellulitis, and flexion limited to 130 degrees; and morbid obesity based on a weight of nearly 450 pounds.   (*Id.*).

### RFC Assessment

State agency physician B. Rock Oh, M.D. assessed Plaintiff's physical residual functional capacity (RFC) in December 2011.   (Tr. 225-231).   He reviewed the medical records but did not

examine Plaintiff.   (*Id.*).   Dr. Oh opined that Plaintiff could occasionally and frequently carry 10 pounds or less (Tr. 225).   He felt Plaintiff could stand or walk for a total of two hours in an 8 hour workday and sit for 6 hours in an 8 hour work day.   (*Id.*).   He opined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and could balance, stoop, kneel, crouch or crawl (Tr. 226).   He felt that Plaintiff should avoid concentrated exposure to hazards such as machinery or heights (Tr. 228).   Dr. Oh based his findings and opinions in part on Plaintiff's BMI of 66.4, straight leg raise of 40 degrees, limited range of motion in the lumbar spine, and decreased forward and knee flexion bilaterally (Tr. 225).

On July 9, 2012, state agency physician C.A. Gotway, M.D. reviewed Plaintiff's file and affirmed Dr. B. Rock Oh's opinions with slight modifications (Tr. 232-234).

On March 29, 2019, at the request of the Appeals Council, Michael W. Dennis, M.D., reviewed the medical information submitted in Plaintiff's case (Tr. 917).   He considered the period December 5, 2010, through July 31, 2027.   (*Id.*).   He noted that Plaintiff had a history of edema of the lower extremities with intermittent cellulitis prior to the period at issue and that reports of significant edema were not prominent in the physical findings until Plaintiff had an episode of cellulitis on May 10, 2013.   (*Id.*).   In assessing the Plaintiff's functional capacity, he opined that if Plaintiff was provided with normal work breaks, his obesity would limit him to sedentary work.   (*Id.*).   He further opined that Plaintiff's lymphedema and recurrent cellulitis would require him to wear compression stockings and elevate his lower extremities while sitting. (*Id.*).   He found that these restrictions dated from May 10, 2013, when Plaintiff's lymphedema became more prominent in the reported physical findings.   (*Id.*).

**Records Not Before the ALJ**

Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error." *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994); *see also Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 366 (7th Cir. 2004).   Here, the AC notified Plaintiff and his representative that it would consider a statement of facts and the law and additional evidence if the additional evidence met the rules in the Notice (Tr. 369).   A statement was submitted by Plaintiff's representative (Tr. 369, 371).   The AC also reviewed a medical expert response from Dr. Michael Dennis dated March 29, 2019.   (*Id.*).   This information was not before the ALJ and cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence.

**<u>Analysis</u>**

The ALJ concluded that Plaintiff has been disabled since September 2, 2015, but was not disabled between December 5, 2010, and September 1, 2015 (Tr. 388-413).   More specifically, the ALJ found that: Plaintiff had severe impairments of obesity, cellulitis, lymphedema of the lower extremities, lumbago, and lumbar radiculopathy (Tr. 395), but prior to September 1, 2015, retained the RFC to perform sedentary work (Tr. 396); beginning on September 2, 2015, Plaintiff had the same RFC but was additionally restricted to elevate his legs to waist level for 20 minutes every hour (Tr. 401); based this RFC, Plaintiff could not perform any work from September 2, 2015 forward (Tr. 402, 404).

The AC adopted the findings of the ALJ regarding Plaintiff's severe impairments (Tr. 371). However, the AC found that the RFC described by the ALJ restricting Plaintiff to a limited range

of sedentary work with the need to elevate his legs to waist level for 20 minutes every hour applied since May 10, 2013, rather than September 2, 2015 (Tr. 369-371).   As such, the AC concluded that prior to May 10, 2013, Plaintiff could not perform his past work, but could work on a less restrictive RFC (Tr. 371); since May 10, 2013, Plaintiff could not perform any work at all (Tr. 372).

### Did the ALJ and Appeals Council Properly Weigh the Medical Opinion Evidence Related to the Period Prior to May 10, 2013?

While Dr. Ayers and Dr. Reynolds both treated Plaintiff, the ALJ is not required to fully credit their opinions.   "While the treating physician's opinion is important, it is not the final word on a claimant's disability."   *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).   A treater's medical opinion is entitled to controlling weight only where it is supported by medical findings ("medically acceptable clinical and laboratory diagnostic techniques…") and is not inconsistent with other substantial evidence in the record.   *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) *citing Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 404.1527(c)(2).   Thus, the ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of a consulting physician, internally inconsistent, or inconsistent with other evidence in the record.   *Henke v. Astrue*, 498 Fed. Appx. 636, 639 (7th Cir. 2012); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

If the ALJ determines that a treating doctor's opinion is not entitled to controlling weight, he must apply the § 404.1527(c) factors to determine what weight to give it.   *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010).   The ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence.   *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

14

Similarly, as long as the AC identified supporting evidence in the record and built a "logical bridge" from that evidence to its conclusion, the decision must be affirmed. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).   This is true even if reasonable minds could differ about the ultimate disability finding.  *Id.*

Here, the ALJ considered Dr. Ayers' impairment questionnaire, Dr. Ayers' letter regarding Plaintiff's capabilities, and Dr. Reynolds' impairment questionnaire, and spent considerable time reviewing Plaintiff's medical and treatment history (Tr. 396-400).   She ascribed "little weight" to Dr. Ayers' impairment questionnaire and opinions based on actual treatment notes and other medical evidence that did not support the degree of limitation assessed by Dr. Ayers. (Tr. 400). For example, while Dr. Ayers noted pain and fatigue at a level 8 on a scale of 1 to 10 without adequate relief with medication, his records show that he routinely assessed by Plaintiff to be in no acute distress, with little or no abnormal findings on musculoskeletal exam, and having stable medically managed back pain.  (*Id. citing* 193-194, 203-209, 236-238, 269-270, 296, 312, 320). Additionally, the ALJ found that the radiographic studies relied upon by Dr. Ayers showed only mild or minimal abnormalities.   (*Id. citing* 196, 787, 797).   Further, Plaintiff's cellulitis was medically managed and his edema reported infrequently.   (*Id.*).   The ALJ further noted that Dr. Ayers' opinion that Plaintiff could occasionally lift and carry up to 10 pounds seemed "contrary" to his assessment that Plaintiff's pain and fatigue was an eight out of ten (*Id.*).   He also declined to credit Dr. Ayers' assessment of Plaintiff's limited ability to concentrate, maintain attention, and tolerate work stress because it was inconsistent with his "routinely normal mental status exams" (*Id. citing* 203-206, 238, 269-270, 320).

The ALJ also evaluated Dr. Ayers' letter and gave it "little weight" (Tr. 400).   She found

Dr Ayers' blanket statement regarding the Plaintiff's inability to work due to the daily pressure of his weight along with lower extremity edema was not based on a function-by-function analysis as to work capacity (a determination as to disability) – a finding reserved to the Commissioner.   (*Id.*). *See Spies v. Colvin*, 641 F. App'x 628, 636 (7th Cir. 2016) (an ALJ may discount a doctor's opinion that is "speculative and conclusory on issues reserved for the Commissioner.").   The ALJ also found that the statement is inconsistent with the modest abnormal clinical findings noted on physical exams and radiographic studies at that time despite Plaintiff's extreme obesity.   (*Id. citing* 196, 203-209, 236-238, 269-270, 296, 312, 320).   *See Henke,* 498 F. App'x at 640.

Likewise, the ALJ evaluated Dr. Reynolds' impairment questionnaire and opinions and gave them "little weight" as well (Tr. 400).   She found that the treatment notes and medical evidence did not support the level of dysfunction assessed by Dr. Reynolds: Dr. Reynolds cited just moderate and stable back pain with minimal if any abnormal findings on musculoskeletal exams despite the Plaintiff's obesity; Dr. Reynolds records do not indicate any claudication or edema, and no gait disturbance; Plaintiff had no numbness in his extremities or tremors despite Dr. Reynolds' assessment of significant hand and arm limitations; Plaintiff's balance and coordination were intact, as were his fine motor skills; Dr. Reynolds noted that Plaintiff could lift and carry up to 20 pounds occasionally; and despite temporary worsening back pain in June 2013, physical findings remained modest or essentially unchanged.   (*Id. citing* 196, 203-209, 236-238, 269-270, 312, 320, 330, 354-363, 769-774, 780-796).

Based on the foregoing, the ALJ identified and referenced the inconsistent evidence and weight she ascribed to various portions of the evidence in supporting her opinion – building the logical bridge to her ultimate conclusion that prior to September 2, 2015, Plaintiff had the RFC to

16

perform sedentary work with various exceptions based upon his obesity. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7ᵗʰ Cir. 2005); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7ᵗʰ Cir. 2004); *Scott v. Astrue*, 647 F.3d 734, 740 (7ᵗʰ Cir. 2011). She permissibly attached significant weight to the opinions of the state agency reviewing physicians; finding that they have medical expertise, familiarity with the disability program, and that their opinions were more consistent with the treatment notes at the time of their review including modest/stable low back pain and infrequent edema with medical therapy despite extreme obesity (Tr. 401 citing 196, 203-209, 238, 269-270, 320).

The ALJ's analysis does not suffer the same shortcomings that the prior ALJ's analysis did when he made generalized conclusions with no reference to specific diagnostic findings, imaging reports, and other findings on exams. While Plaintiff disagrees with the ALJ's conclusions and determinations, even if "reasonable minds could differ concerning whether [the claimant] is disabled," this court must affirm where, as here, an ALJ supported her determination with substantial evidence. *Elder*, 529 F.3d at 413. In other words, this Court may not reweigh the evidence, resolve conflicts in the record, decide questions of credibility, or substitute its own judgment for that of the Commissioner. *Young v. Barnhart*, 362 F.3d 995, 1001 (7ᵗʰ Cir. 2004).[2]

The AC ultimately disagreed with the ALJ when it found that the disability date began May 10, 2013, not September 2, 2015. It gave "significant weight" to Dr. Reynolds' January 22, 2014 opinion that Plaintiff experienced lymphedema of the bilateral lower extremities and would need to elevate both legs when sitting to alleviate pain and swelling (Tr. 376 *citing* 345-353). It found

---

[2] The AC adopted the ALJ's reasons for giving Dr. Ayers' 2011 opinions "little weight." (Tr. 376, 396, 400). Since the AC's findings regarding Dr. Ayers' 2011 opinions did not conflict with the ALJ's findings, there is no need for this Court to separately review the AC's findings. See *Schloesser v. Berryhill*, 870 F.3d at 717.

the objective medical evidence established that from May 10, 2013 forward, Plaintiff experienced significant edema, lymphedema and cellulitis, such that he would be required to elevate his lower extremities when he was sitting.   (*Id. citing* 769-774, 775-779, 780-796, 799-806).

Dr. Michael Dennis, a medical consultant to the AC, opined that due to the severity of his lymphedema, beginning on May 10, 2013, Plaintiff retained the RFC to perform a reduced range of sedentary work with postural and environmental limits, and would be required to elevate his legs to waist level for 20 minutes out of every hour (Tr. 370).   The AC attached "substantial weight" to Dr. Dennis' opinions.   (*Id.*).   Based upon the combination of Dr. Reynolds' and Dr. Dennis' opinions regarding the RFC to perform a reduced range of sedentary exertional level, the AC concluded that Plaintiff was disabled as of May 10, 2013 (Tr. 370, 372).

Because the AC's findings regarding Plaintiff's disability date and the weight of Dr. Reynolds' opinion conflicted with the ALJ's findings, this Court must determine whether the AC's decision is supported by substantial evidence on the record as a whole, applying the same standard employed to assess the ALJ's decision.   *Schloesser*, 870 F.3d at 717 *citing Bauzo v. Bowen*, 803 F.2d at 919.   If the AC identified supporting evidence in the record and built a "logical bridge" from that evidence to its conclusion, the decision must be affirmed.   *Id.* It satisfied this requirement.

The AC identified very specific dates, evidence, conditions, and records to support its finding that Plaintiff's actual date of disability was May 10, 2013.   It noted that Plaintiff was treated for cellulitis on May 10, 2013 and the medical records for that date first established that Plaintiff's significant edema, lymphedema and cellulitis would require the elevation of his lower extremities when sitting.

18

Plaintiff states that he experienced swelling in his knee at times before May 2013 and argues that the swelling in his legs became disabling on March 1, 2011, when an MRI showed swelling on his right knee.   But swelling must be ongoing for 12 months continuously to support a finding of disability.   20 C.F.R. §404.1509.

The AC relied upon the opinions of Drs. Reynolds and Dennis in finding that Plaintiff's disability did not begin until May 2013.   Dr. Reynolds opined in January 2014 that Plaintiff would need to elevate both legs when sitting to alleviate pain and swelling (Tr. 376).   Dr. Dennis found that "reports of significant edema were not prominent in the claimant's physical findings until the claimant had an episode of cellulitis on 5/10/13" (Tr. 917) and that starting in May 2013, Plaintiff would need to elevate his legs when sitting (Tr. 370 citing 917).   The need for Plaintiff to elevate his legs when sitting altered his RFC from sedentary to sedentary with postural and environmental limits, which cannot be satisfied by any job in the national economy (Tr. 377).   The AC's finding that date of disability commenced on May 10, 2013 is supported by substantial evidence in the record as a whole.

In sum, neither the ALJ nor AC failed to properly weigh the medical opinion evidence with respect to the period prior to May 10, 2013; their findings are supported by substantial evidence.

### Did the ALJ and Appeals Council Properly Evaluate Plaintiff's Subjective Statements for the Period Prior to May 10, 2013?

The ALJ's findings regarding the credibility of Plaintiff's allegations are to be accorded deference and should be upheld unless patently wrong.   *See*, *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Burmester*, 920 F.3d at 510.   Only where an ALJ's assessment lacks any explanation or support will a reviewing court declare it to be patently wrong.   *Elder*, 529 F.3d at 413-414.   Social Security regulations and Seventh Circuit cases "taken together, require an ALJ

to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), *and cases cited therein*. However, an ALJ is only required to give reasons sufficient to provide a fair sense of how she assessed Plaintiff's statements, and the reviewing court should affirm an ALJ's findings so long as she gave specific reasons supported by the record.   SSR 16-3p, 2017 WL 5180304; *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of those symptoms are not fully supported prior to September 2, 2015 (Tr. 399-400).[3]  Her findings are supported by the medical records which show that Plaintiff's doctor visits were sporadic, as were his complaints at each visit.   His doctor visits in April 2013, June 2013, and January 2014, were the first series of visits during which his complaints were consistent and regularly addressed.   The ALJ also determined that Plaintiff was maintained on a stable dose of narcotic pain relievers with no directive for more aggressive treatment (Tr. 401). Plaintiff offers no substantive criticism of the ALJ's reliance on normal findings made by his treating doctors on physical exams.   Relatedly, the ALJ found that Plaintiff's work ended because of a layoff, not because of his inability to handle the physical demands of the job as Plaintiff alleged (Tr. 401).

The ALJ's (and AC's) conclusion as to the accuracy of plaintiff's statements was supported

---

[3] The AC adopted the ALJ's findings before modifying the date of disability to May 10, 2013 (Tr. 369, 376).

by the evidence and was not "patently wrong;" they must therefore be upheld.   *Schmidt*, 496 F.3d at 842.   Thus, Plaintiff has not identified a sufficient reason to overturn the ultimate decisions by the ALJ and the AC that Plaintiff was disabled beginning on May 10, 2013.

### Conclusion

After careful review of the record, the Court concludes that the ALJ and AC committed no errors of law, and that their findings are supported by substantial evidence.   Accordingly, the final decision of the Commissioner of Social Security granting Plaintiff's application for disability benefits beginning on May 10, 2013, is **AFFIRMED**.   The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED:   December 7, 2022**

**STACI M. YANDLE**
**United States District Judge**